WRIGHT, administratrix, *v.* CLARK, administrator.

1. The authority conferred by statute (Civil Code, § 3935) on temporary administrators to collect and take care of the effects of the deceased until permanent letters are granted can not be augmented by a private agreement between the temporary administrator and the widow of the deceased. Accordingly, in an action by a permanent administratrix against the temporary administrator for an accounting as to certain personal property of the intestate coming into his hands, a paper purporting to be an agreement between the widow and the temporary administrator, conferring authority upon the temporary administrator in regard to disposal of the property of the intestate coming into his hands, is irrelevant.

2. In such a case a record was also irrelevant which consisted of a judgment of the court of ordinary setting apart a year's support to the widow, composed, among other things, of "three one-horse crops after the rent and expense bill to complete same has been paid," when it was offered, not for the protection of the temporary administrator in turning the property over to the widow, but for his protection in paying out the proceeds of the crops in payment of rent and expenses incurred to complete the crop and supplies furnished to the intestate.

3. In an action by a permanent administratrix against a temporary administrator, for an accounting relative to property of the estate coming into the hands of such administrator, a judgment of the court of ordinary purporting to discharge the temporary administrator, which recites that it was made to appear before the court of ordinary that the temporary administrator had administered the estate "in accordance with an agreement in writing," would not be conclusive upon the permanent administrator on the question of accounting.

4. In such a suit the temporary administrator was incompetent, as a witness in his own behalf, to testify to conversations and agreements between the intestate and himself while acting as agent for his brother, to whom, on the strength of such agreements and conversations, he paid out certain funds coming into his hands as temporary administrator.

JULY 13, 1916.

Appeal. Before Judge Hammond. Burke superior court. May 8, 1915.

*M. C. Barwick,* for plaintiff.

*Frank Hardeman* and *H. J. Fullbright,* for defendant.

ATKINSON, J. 1. A widow, as administratrix of her deceased

husband, filed a petition in the court of ordinary against the temporary administrator of the estate, alleging, among other things, that certain personal property had come into his hands as temporary administrator which had not been turned over to petitioner, and praying that he be required to account for all the property mentioned in the petition. In response to the rule nisi, the defendant filed an answer in which he admitted having received all the property described in the petition, except certain portraits and household and kitchen furniture, and denied that he had failed to turn over to the plaintiff the property admitted to be in his hands. The case was appealed to the superior court, and on the trial there the defendant was allowed, over objection, to introduce in evidence the following paper: "In Re Estate of Thomas Wright. To settle all matters of dispute, both year's support and administration. The parties agree: The temporary administrator, A. M. Clark, is to proceed as rapidly as possible to gather and house all crops for the year 1910. Said temporary administrator is to complete the payment of rent to the landlord. The temporary administrator is to advertise for ten days the balance of the corn now in possession, and sell the same at public sale, and, after paying from all of the proceeds of all the crops the rent due for 1910, the landlord supply bill due 1910, and the expense of making and gathering said crops, is to pay the balance, if any, to the permanent administrator hereinafter appointed. It is agreed that the ordinary of Burke County shall adjourn this court to the third Monday in November, 1910, at which time the ordinary, by consent of parties, shall appoint such person as permanent administrator as shall be selected by the widow of the deceased or her attorney at law, M. C. Barwick. The cost of said public sale is to be paid from the proceeds of the sale. All other property, not crops or proceeds, to be turned over by the temporary administrator to said permanent administrator. Nov. 7th, 1910. [Signed] R. N. Hardeman, atty. for A. M. Clark, Tem. Admr., and W. E. Clark, landlord. M. C. Barwick, atty. for Cora Wright, widow of Thos. Wright." The objection urged to the admission of the paper was: "The agreement was immaterial, could give the defendant no authority for violation of his duties, and did not estop the administratrix from recovering the property sought to be recovered." It was erroneous to admit the evidence over the objec-

tion. It is provided in the Civil Code, § 3935: "The ordinary may at any time grant temporary letters of administration upon any unrepresented estate, for the purpose of collecting and taking care of the effects of the deceased, to continue and have effect until permanent letters are granted; and from the order granting temporary letters there shall be no appeal." It will be observed from this that the office of temporary administrator is statutory, and the administrator can have no power except such as may be conferred upon him by law. There is no law which authorizes such an administrator to enter into a private agreement with an heir at law or other person for the disposition of assets of the estate coming into his hands. He is authorized and it is his duty under the law to collect and take care of the effects of the deceased until permanent letters are granted. The paper in question purported in part to deal with these duties of the temporary administrator, but this did not confer any authority. Authority for anything which the temporary administrator might do looking to the collection and taking care of the effects of the deceased would arise out of the law, and not under the reputed agreement; and any attempted authority beyond this, in virtue of the reputed agreement, would be illegal, and the alleged agreements contained in the paper would not protect the temporary administrator from the consequences of his act in disposing of the property of the estate coming into his hands otherwise than as provided by law. Under this view the evidence was clearly irrelevant.

2. The defendant was also allowed to introduce, over objection, a certain application by the widow for a year's support, an order appointing appraisers, the return of the appraisers, and the judgment of the court setting apart a year's support to the widow, composed, among other things, of "three one-horse crops after the rent and expense bill to complete same has been paid." The objection urged to the admissibility of the evidence was that it was irrelevant and immaterial, and that there were no pleadings on which to base it. The evidence was not relied on to protect the temporary administrator for having turned over any property to the widow which was awarded to her as a year's support, but it was offered in connection with other evidence to the effect that the temporary administrator had used the proceeds of the crops in paying off rent and claims for supplies furnished to the intestate,

and for costs of completing and harvesting the crops. In connection with such evidence the record and judgment setting apart the year's support was relied on to protect the temporary administrator in paying off claims as indicated above. The order of court setting apart the year's support to the widow was intended merely to provide for her support, and not for the purpose of conferring any administrative powers upon the temporary administrator. As the order of court did not confer any such authority upon the temporary administrator, it would afford him no protection for having paid out the proceeds of the crop as indicated, and the record was therefore irrelevant.

3. The defendant was also allowed to introduce, over objection, a paper purporting to be a judgment of the court of ordinary, which declared: "In Re Estate of Thos. Wright: It appearing to the court that the temporary administrator, A. M. Clark, has, in accordance with an agreement in writing, administered this estate and surrendered to the permanent administratrix, this day appointed, the property belonging to said estate, upon an examination of the accounts, actings, and doings of said temporary administrator, be and he is hereby discharged." The objection to the admissibility of the paper was that the ordinary had no power to discharge a temporary administrator, especially without citation, and that the order contained recitals that were prejudicial to the plaintiff and irrelevant to the issues on trial. The only purpose for which a discharge of the temporary administrator could be material in a case for an accounting against him would be to show that the parties had been concluded upon the questions at issue. Before a paper could have any such effect it should appear upon its face to be a valid judgment. This was the case of a temporary administrator whose duties and authority were limited to collect and take care of the effects of the intestate until a permanent administrator could be appointed. These are conferred upon him by law; and his acts connected with the estate of the intestate must be with reference to the law, rather than in accordance with any agreement which the administrator might make with some other person. As the paper shows upon its face that the discharge was upon the basis of the temporary administrator having administered the estate in accordance with some alleged agreement which he could not legally have made, it would not be conclusive upon

the permanent administratrix in her action against the temporary administrator for an accounting.

4. The temporary administrator, while being examined as a witness in his own behalf, was permitted to testify: "In the fall of the year Wright [the deceased] was unable to pay for it [referring to the 90 bu. corn, 3,000 lbs. fodder, and 540 bu. cottonseed sold to Wright]; and I told him to go ahead and use it for another year. When he put the corn in the crib, he would come to me and tell me that my corn and other produce was down at the place, and he would deliver the key to the corn-crib to me. Each spring after Christmas he would come to me and I would deliver the key to the corn-crib to him and tell him he might use the corn for another year. Wright said the crib contained the corn he owed my brother. He would tell me every winter that my stuff [referring to the 540 bu. cottonseed and 3,000 lbs. of fodder] was there, and I would tell him he might use it again that year." The testimony was objected to on the ground that the witness, being the opposite party to the suit brought by the permanent administrator of the estate of Thomas Wright, was incompetent to testify to the several transactions and conversations between himself and the deceased. The witness also testified, in effect, that for several years previous to the death of the deceased, witness was agent for his brother, and that during that period the deceased was a tenant on his brother's farm, and operated a three-horse farm. Several years before the death of Thomas Wright he had been farming on halves with the brother of the witness, when they made a different arrangement and the deceased commenced paying rent. Witness's brother's part of his produce was "90 bushels corn, 3,000 lbs. fodder, and 540 bu. cottonseed." Witness's brother sold this produce to Wright and took a note for it. Immediately following such testimony the witness delivered the testimony which was objected to, as quoted above. It thus appears that the testimony objected to related to conversations and transactions which occurred between the temporary administrator, who was the party defendant in the action for accounting, and his intestate, and that at the time of the conversations the witness was the agent of his brother, to whom he had paid out the proceeds of the crop which had come into his hands as temporary administrator, for advancements for making the crop which went into his

hands. According to such contention, the allowance of the testimony would have been in the interest of the defendant; and the other party being dead, he would be incompetent to testify. Civil Code, § 5858. *Judgment reversed. All the Justices concur.*